UNITED STATES DISTRCIT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INGRID MANE,<br><br>                Plaintiff,<br><br>  v.<br><br><br>NOMURA SECURITIES<br>INTERNATIONAL, INC.,<br><br>               Defendant. | Civil Action No.<br>07 CV 2286 (RWS)<br><br>**RULE 56.1 STATEMENT** |

**DEFENDANT'S RULE 56.1
SUMMARY JUDGMENT STATEMENT**

Comes Now, Norma Securities International, Inc. ("Nomura"), pursuant to Local Rule 56.1 for the United States District Courts for the Southern District of New York, who files this Statement of Undisputed Material Facts in conjunction with Nomura's Motion for Summary Judgment and would respectfully show that the following are undisputed issues of material fact:

1. Nomura hired Ingrid Mane ("Mane") in late August 2004 for a back-office position within its International Transaction Processing Department ("International Department"). (Complaint par. 11-12); (Exhibit A Declaration of Daniel S. Cahill with attached excerpts of the Deposition of Ingrid Mane, at p. 50 ln. 4 - p. 51 ln. 6; p. 139 ln. 14 - p. 140 ln. 3).[1]

---

[1] The Declarations and Affidavits cited herein have been filed contemporaneously with this Rule 56.1 Statement

2. In December 2005, Mane was feeling depressed, in part because of a breakup with her boyfriend, and she went to see a psychiatrist concerning her alleged depression. (Ex. A at p. 28 ln 3-23).

3. Mane never provided anybody at Nomura with a doctor's note, drug prescription, psychiatrist diagnosis, or any other single piece of written evidence that she had been diagnosed with depression or that any work accommodations needed to be made in order assist Mane with her alleged depression. (Ex A at p. 45 ln 21-24).

4. Mane herself never requested Nomura to make any accommodation or provide her with an accommodation in connection with her depression. (Ex. A at p. 46 ln. 17 – p. 47 ln. 15).

5. Mane's position at Nomura was never changed and the "cross training" she complains of was a known, integral part of her position in her department, and Mane knew that she was to be cross-trained prior to her alleged diagnosis of depression. (Ex. A at p. 124 ln. 23 – p. 126 ln. 22; p. 146 ln. 22 – p. 148 ln. 19).

6. During the Spring 2006, while she was working at Nomura, Mane used illegal drugs four (4) evenings a week, and Mane was involved in a dysfunctional romantic relationship that eventually led to her arrest for assaulting her boyfriend. (Ex. A at p. 62 ln 2-17 and p. 73 ln. 7 – p. 75 ln. 24).

7. Mane had several confrontations where she threatened her co-worker Jason Naggiar ("Naggiar") in late April and early May 2006. (Exhibit D, Declaration of Jason Naggiar).

8. Naggiar informed his supervisor, Colacino, as well as a manager in Nomura's Human Resources Department, Robyn Bogash ("Bogash"), that Mane had threatened to

physically harm him on several occasions. (Ex. B Declaration of Nancy Prahofer at attachment 3); (Ex. D).

9. Mane confronted Naggiar several times in this fashion, and by mid-May 2006, Naggiar wanted Nomura's Human Resources Department to document her multiple threats of assault. (Ex. D; Ex. A at p.95 ln. 20-23); (Ex. B at Attachment 3); (Ex. C Affidavit of Robyn Bogash).

10. Nomura's Human Resource Department conducted interviews and meetings to address Mane's inappropriate and hostile behavior towards her co-worker. (Ex. C Affidavit of Robyn Bogash).

11. Mane admitted that her behavior towards her co-worker Naggiar was <u>inappropriate</u> and <u>unacceptable</u>, and Mane thought her confrontations with Naggiar had placed her job in jeopardy. (Ex. A at p. 99 ln. 2-13; p. 101 ln. 11-22).

12. Mane admits that her behavior towards Naggiar was "unbusinesslike." Unbusinesslike behavior was identified in Nomura's Employee Handbook as a reason for termination of employment. (Ex. A at p. 143 lines 11-18; Ex. B at attachment 6, section 6.3).

13. Mane believed her confrontations with Naggiar would get her into trouble and <u>admits it is possible she was terminated by Nomura as a consequence of her confrontations with Naggiar and her abandonment of her job</u>. (Ex. A at p. 146 ln. 10-22).

14. Mane, despite all her meetings with Nomura's Human Resources Department, never told anyone in Nomura's Human Resources Department of her alleged diagnosis of depression. (Ex A at p. 45 ln. 25 – p. 46 ln. 5; p. 50 lines 5-14; p. 102 ln. 4 – p. 104 ln. 16; p. 134 ln. 19 – p. 135 ln. 22; Ex. C at para. 6-7).

Case 1:07-cv-02286-RWS   Document 12   Filed 04/23/08   Page 4 of 6

15. Despite group and individual meetings devoted to dealing with the issue of Mane's inappropriate conduct toward Naggiar, Mane never requested any change in her working conditions to accommodate an alleged disability. (Ex. A at p. 46 ln. 17 - p. 47 ln. 15).

16. One step taken by Nomura to diffuse the situation between Mane and Naggiar was to change the seating arrangements and move Naggiar's seat to the opposite side of the work area. (Ex. A at p.104 ln. 2-5; p. 121 ln. 18-20).

17. Mane's position with Nomura required her to reconcile international trades, which sometimes meant the trade occurred before Mane's scheduled start time of 8:30 a.m. (Exhibit A at p. 52 ln. 4-8 and p. 53 ln. 3-5).

18. Over the first five months of 2006, Mane was frequently late to work, arriving after 9:00 a.m. on over fifty (50) occasions and after 10:00 a.m. more than a half-dozen times. (Ex. A at p. 142 lines 2-17; p. 56 ln. 2 – p. 57 ln. 22); (Ex. B at attachment 1).

19. Mane was told that her repeated late arrivals were not acceptable work behavior but she continued to arrive late. (Ex. A at p. 69 ln. 8 – p. 70 ln. 18).

20. Mane's repeated failure to report to work on time violated Nomura's attendance policy, as reflected in its Employee Handbook defining excessive tardiness as more than 13 late arrivals within any 12 month period. Unauthorized or excessive tardiness was specifically identified in Nomura's Employee Handbook as basis to terminate employment. (Ex. A at p. 142 ln. 2 – p. 143 ln. 10); (Ex. B at attachment 6, at section 2. 10 and 6.3).

21. Louis Colacino ("Colacino"), Mane's supervisor, documented a number of Mane's late arrivals, and Nomura's electronic entry system recorded additional instances establishing Mane's late arrivals. (Ex. E Affidavit of Louis Colacino); (Ex. B at attachments 1 and 5).

22. Colacino attempted to address Mane's tardiness issues by reminding her of the necessity of arriving at work on time. (Ex. E).

23. On Friday, May 19, 2006, Mane arrived late to work, and she left her job before noon. (Ex. C); (Ex. B at attachment 1).

24. When Mane spoke with Bogash later that day (May 19th), Mane said that she left Nomura because she felt uncomfortable and like an outsider at work. (Ex. A at p. 121 ln. 5-17).

25. After leaving her job on May 19th, Mane boarded a plane and flew to Florida for a vacation. (Ex. A at p. 129 ln. 1 – p. 130 ln. 24).

26. Mane, in 2006, through a placement agency, obtained a position at Lazard Investments, quickly followed by a full-time position as a portfolio administrator at Julius Baer Investment Management. Mane is currently earning a $65,000 annual salary plus an $8,000 bonus. (Ex. A at pp. 10-11, p. 160-61, and p. 162 ln. 16-19).

27. The feelings and symptoms of depression Mane had experienced in early 2006 went away and her depression lifted by the end of the summer 2006. (Ex. A at p. 30 ln. 7 – p. 32 line 23).

28. Mane credits the elimination of her depression and its symptoms with a combination of therapy and medication (Ex. A at p. 31 ln. 8-15). At the same time, however, Mane ended an ordeal-like, dysfunctional romantic relationship which had involved the routine use of illegal drugs (4 evenings per week) and in the summer of 2006 she also stopped her use of illegal drugs. (Ex. A at p. 62 ln. 2 – p. 63 ln 3; p. 65 ln 6-22; p. 73 ln. 16 – p. 76 ln. 2; p. 32 ln. 24 – p. 33 ln. 4; p. 38 ln 7-25).

29. Mane has not claimed any disability or sought any accommodation for an alleged disability at her current job. (Ex. A at p. 162 ln. 16-22).

30. Mane has not regularly arrived late to her current job (Ex. A at p. 71 ln. 24 – p. 72 ln. 9).

31. Since her termination from Nomura in the Spring of 2006, Mane has stopped using illegal drugs and ended her dysfunctional romantic relationship, and the impairments that she allegedly suffered from in 2006 have ceased to trouble her. (Ex. A at p. 31 ln. 9 - p. 33 ln. 4).

Dated: April 23, 2008
       Saratoga Springs, NY

                      CAHILL/WINK LLP

                      s/Daniel S. Cahill
                By:  Daniel S. Cahill (DC 5593)
                      Michael Schimek (MS 4285)
                      60 Railroad Place, Ste. 202
                      Saratoga Springs, NY 12866
                      (518) 584-1991
                      *Attorneys for Defendant*
                      **NOMURA SECURITIES INTERNATIONAL, INC.**